your honors I would like to could you introduce yourself for the record please excuse me may it please the court Halloran Thurman on behalf of Nancy Schwartz I would like to spend six minutes of my time on addressing the court's first order six minutes of my time addressing the court's second order and I'd like to reserve three minutes for a bottle if the court will allow well we'll do our best but we'll ask what we ask and take whatever time it takes so in response to the court's first order did the district court Aaron granting summary judgment to the city of Susanville for the alleged practice of obtaining bail enhancements through ex parte telecommunic ex parte telephone communications denying him mr. Parker due process and violating mr. Schwartz's right to the 14th amendment and I would argue that the district court absolutely did error the district court and evaluating this claim cites the Kim V city of Santa Clara this is an unpublished opinion coming out of the ninth district I'm sorry the the Northern District of California West 234774 in which the district court that granted summary judgment alleged that they are allowed to determine on summary judgment whether conduct shocks the conscience that that may be determined by the district court on summary judgment we would argue that not only is that case inapplicable but it also there is no there is no place in Kim V city of Santa Clara where they specifically state that the court has that authority in Kim V city of Santa Clara the court does make a determination on whether or not the conduct is conscience shocking but they do not state that they have the authority to do that this would go against decades worth of jurisprudence guiding the standard of summary judgment on review by the circuit court under sellotex the court must regard as true the opposing parties evidence supported by affidavits or other evidentiary material and the court must draw all inferences in favor of the non-moving party also sellotex 477 us at 324 with regards to the actual evidence that there although there may be no actual direct evidence there are several inferences that can be drawn in favor of the non-moving party here officer Vega's depo does state that he had nothing to do with raising bail however the deposition of Tyler Fitch ECF number 139 at 3 note 3 states that his bail was raised by ex parte phone conversation with a judge in 2009 in the same manner under Moreland the Las Vegas metro police department 159 F 3rd 365 372 this is a purpose to cause harm not related to the purpose of the arrest they should have also considered the deposition of Mr. Atkinson the chief of police of the city of Susanville and they said that since his deposition was incorrectly cited as docket entry 121 that they would not consider it however it is a docket entry 122 and he does state in his deposition under oath that there was a custom that he was aware of that on numerous occasions police officers did call the judge personally to raise bail by ex parte means counsel I'd appreciate your turning to the causation issue if you would the causation issue in the causation issue is even if there was some delay in sending a bail request to the judge Mr. Parker to the hospital even if the bail was raised in an improper manner how are the damages that are claimed here attributable in any way to those events to the city of Susanville's events or to the county's event either because what we I mean just you know this he was quite ill before he got to jail he was in a hospital he may have had a delay in seeing a doctor giving the benefit of the doubt he was sent to the hospital and he spent a month in the hospital before he passed away so I guess what I'm having difficulty seeing in this long unfortunate chain of events where any of the damages that is his illness or his demise were caused by this very small slice of time when he was in the jail yes your honor we have several strong arguments in support of that it was a disputed fact whether or not he was actually seen by a doctor in the first few weeks of incarceration but counsel here's the problem and let me maybe more specific in my question as I saw the record and maybe I'm wrong about this I didn't see a single affidavit from a doctor or medical professional saying if we had been able to treat this individual sooner a week sooner he would have survived or he wouldn't have been ill or he would have not suffered yes your honor the surgical consultation with Dr. Brock this is after Mr. Parker had requested numerous times and stated on numerous medical forms that he was in pain that the jail officials ignored his surgical consultation after he was rushed to the hospital in a life-threatening way states that the patient began suffering severe abdominal pains in the low abdomen yesterday this is at LSCR page 100 this raises an inference of material fact a genuine fact. Why because what it sounds like to me is once he experienced the severe pain they sent him to the hospital they sent him within hours of that severe pain and that medical record says nothing about whether he would have been less ill or would have survived had he come in hours earlier or even days earlier that's what seems to me to be missing here at least I'm just speaking for myself my own concern about whether this case can survive summary judgment. What should the county and I guess the undersheriff know or LCADF what should the county and I guess the undersheriff know or LCADF what should they have done differently here. Well, the the county makes an issue out of the fact that he does he repeatedly does not mark the pain box on his intake or on his health care services request forms however on August 3rd 2009 he does complain of pain in the lower stomach and on October 9th 2009 he also complains of pain. So what do you say about you know that you saying they were deficient in or they could have done differently to treat his alleged serious medical needs? Well he was evaluated numerous times by a doctor's assistant instead of a doctor and if he had been evaluated by a doctor sooner then it's arguable that he could have received a life saving treatment before filling out all these medical forms that they repeatedly ignored his requests of pain his mentions of pain and lower abdominal pain on three separate medical forms. And it wasn't until he pressed the emergency button and he was seen by it was correctional supervisor Joan Schmidt it was not until she saw him crippled over in pain that they actually rushed him to the hospital. How much what was the delay in that? That's also a genuine issue of material fact the records state at LSCR 143 that he make he marked that he was in pain on 10-9 and he was in pain on 10-11. And he was in pain on 10-9 and yet he wasn't taken to the hospital until they say hours later you know it's a genuine issue of material fact as to how much time delay there was. Joan Schmidt says I was somewhat aware of Parker's abdominal problems and heart condition these conditions were consideration in evaluating the seriousness of the situation and this was not until he had pressed the emergency button to call for help. Between the time he pressed the emergency button and he was sent to the hospital what was what does the record show? The record shows that he was sent to the hospital almost immediately however it wasn't until he pressed that pain button or it wasn't until he. Let me move on let me ask you so what's your I guess best argument that the evidence or evidence that you can highlight that the medical care he received was substandard. Absolutely your honor as I as I tried to state earlier the surgical consultation with Dr. Brock after he did arrive at the hospital says the patient began suffering severe abdominal pain and pain that would not have occurred if he had not gone to the hospital. He also states that he was in the low abdomen yesterday so right there that raises an inference of material fact that he could have been transported to the hospital at least a day sooner. Second of all he goes on to say and also states that the diverticular abscess has decreased in size although I would have hoped for better. So counsel is your argument that Bedford's increase in the amount of bail that resulted in him being incarcerated because he couldn't make it. He would not have been incarcerated during this period of time and would have gotten adequate medical treatment. Yes your honor that's one of the arguments it's also the argument that. What's your what's your evidence to whether you or what inference what can we point to to inference because he'd been multiple times picked up by the by the officers for under this purported restraining order. Yes and that's that's further that's further evidence that they should have been aware of his medical conditions. Nancy Schwartz says that he had visibly lost over 40 pounds when she saw him in jail. This is corroborated by the affidavit of Laura Lee at LSER 153 she states in her affidavit that Michael Parker had lost a lot of weight. But what is the evidence that that would have been different that the course of his illness would have been any different had he not been incarcerated. Where is the medical or other evidence that the course of his disease would have been more favorable in terms of an outcome. Yes your honor well we believe that should have been decided by a jury because John Minow states in his deposition that there is no record that a medical director ever prescribed Parker a special diet during his September September October 2009 incarceration. This is at LSER 119. Also on August 3rd of 2009 Parker was prescribed the quote-unquote brat diet which is bananas rice applesauce and toast by John Anderson and that's at LSER 062. Let me just so it's just if we find and I'm just throwing this out for argument's sake that the defendants were not indifferent indifferent not deliberately indifferent to his his medical needs. And therefore Mr. Parker's constitutional rights were not violated is that fatal and because I just want to understand this familial association allegation. But is that fatal to miss Schwartz claim for loss of familial association. I'm sorry I don't understand the connection well if his constitutional rights were not violated can she claim I'm sure she win on the loss of familial association. I mean I guess how can her due process rights which I think is what you're alleging have been violated if Mr. Parker's due process rights were not. Well there is a constitutional protected liberty interest under current now by and through current now rich the city of Ridgecrest police to prevail on a 14th amendment claim arising out of a loss of a familial relationship. The plaintiff must show that the defendants conduct shocks the conscience. We would not argue that the officer's conduct has to be unconstitutional but merely it deprives her of the familial relationship by way of conscience shocking conduct. And if there are no other questions I'd like to reserve the rest of my time. You may do that. Thank you Your Honor. Thank you Your Honor. Your Honor may please record Mark Jones for the county of Lassen and under Sheriff John Minow. Counsel for the city of Susanville will address the bail issue that's not really the county's issue. And I certainly appreciate I know all counsel does appreciate when the court issues an order like you did. Excuse me would you divide this as seven and a half and seven and a half please. That way we'll know when we're done. Easier said than done I guess I don't know how to run those things. You can give me seven if you want. Oh no that's fine. But we want more than four seconds I think that's a little short. Okay we'll bear in mind that you have seven and a half. I would just say that we always appreciate when the court directs our attention to particular issues when there are a lot of issues in these cases. But I think the court the question. Excuse me yeah go ahead that's great okay. I think the court in the questions that were addressed to Mrs. Schwartz's attorney really do highlight the fact that in this particular record there is zero evidence on the causation issues. I don't know that the court needs to get there on this case I may hopefully address that if I have time. I don't know that the court needs to get there on the liability part of it but even assuming liability which is I think what the court is looking at some of the questions. What is the evidence that anything that anybody did at the county at the jail either did or didn't do in some way contributed to or caused any damage and in particular the death of Mr. Parker. The fact is that they're at the lower court level they had no expert testimony they had no medical evidence. They had no medical testimony all the doctors were deposed the doctors and the nurse at the jail the doctors at the hospital a number of them were deposed. Nothing in the record that they could come up with reflected that anybody that had any medical training suggested that hey if he would have gotten earlier treatment if he would have gotten different treatment the outcome would have been different. The fact is he was a sick guy. The record reflects that the jail folks and the officers in the Susanville Police Department for that matter knew this guy pretty well. He'd been in and out of jail they knew his medical condition it's somewhat ironic I suppose but his treating doctor in the jail Dr. Meadows was his doctor since he was seven years old. It's a small town he knew this guy he knew all the problems that he had since he was really young in terms of his heart condition. So I think the record is replete with. Let's talk about the familial association then I'm just trying to figure out if the county has a policy concerning when family members of inmates are contacted I guess when there's an emergency and also informed if they're taken to the hospital. No there's not a policy about that the policy is that if someone is taken to the hospital they can't have visitation for the reasons that are set forth in the record. So I guess I'm trying to figure out why was Ms. Schwartz not informed of Parker's hospitalization in October I mean is that just something you wouldn't do? It's just something that wasn't done I know that they wouldn't necessarily do it or not do it it just wasn't done. I think that the thing that's telling about John Minow and this kind of gets back to the liability part. The first mention of under Sheriff Minow in the 14 pages of statement of facts in the appellant's brief is on about page 14. Where he's informed by the jail staff that hey Mr. Parker was taken to Renown Hospital in Reno. That's the first time he's involved in this he's not involved in the incarceration of him he's not involved in the medical treatment of Mr. Parker and what does he do? The record reflects that his only involvement in this case is when Mrs. Schwartz sees him at a class I think it was and says hey what's going on with Mike I haven't gotten any word from him for a while. And he says well geez you know he's in bad shape he's in Renown Hospital I'll tell you what I'll do I will contact the district attorney and see if we can get him released on his own recognizance which is just paperwork really because he's not going anywhere because he's dying. And he tells her and this is in the record in our brief that we specifically highlighted he tells Mrs. Schwartz if that doesn't work I will take you to the hospital because I can get you in to see him. Now under that undisputed set of facts there is no possibility that there is any exposure to the county or Mr. or Sheriff Minow on that. Well wait a second Sheriff Minow also testified I mean you're telling us that everyone knew he was really sick and everything. He also testified that when someone is being booked into the prison that the policy and they're very sick and you would think that they're going to go to jail. But he testified and I have to admit that everyone knew he was very sick that excuse me Sheriff Minow testified that the arrestee is rejected at booking and referred to a hospital for a medical clearance before they can complete a booking process and you not only had Minow not only had the presence of you know someone very sick coming to the booking process he also arrived with two letters from two physicians who said he should not be incarcerated. There's no evidence in the record that that under Sheriff Minow was aware that Mike Parker was even in jail let alone that he saw these these letters until after this lawsuit was filed. Okay so I'm talking about county liability. Minow is saying what the policy is. Was that policy followed here? But there's no evidence that there is zero evidence in the record that this fellow was sick in the sense that he needed immediate medical attention when he was booked. What what these letters indicate is he's got this this problem. He should be incarcerated. No they didn't say he should not be incarcerated and they wouldn't be able to do that anyway. The fact is is that when he showed up the policy is if someone is in need of medical treatment they at that time in booking they go to the they go to the hospital to get cleared. He simply filled out a form they knew that he had these historical medical problems so they were keeping an eye on him. But when he was booked he was not in need and the record is clear he was not in need of emergency medical care at that time nor did he need that care for quite some time. And who made that determination? Who made the determination that he didn't need care? Well it's made by the intake staff and by the person and by the the well by Mr. Parker. He didn't indicate a medical person and then Mr. Parker submits five health requests service requests between September 22nd and when he was hospitalized. And those were primarily requesting records records and a CT scan. And what happened in my CT as soon as as soon as it was indicated that he needed a CT they sent him in the hospital and he got a CT and he came back. I think it's and my time is running short here but I think it's it's really important. The question on familial association you're right if there's no due process violation there's not going to be a familial for Parker there's none there's no familial association violation claim or Mrs. Schwartz. But keep in mind there there is no evidence of any other inmate that ever was had deliberately indifference to his medical care. There is no policy there's no evidence any policy practice there's no evidence of a Monell claim whatsoever. Even if Mr. Parker died because he didn't get proper care in the jail. And John Monell was not involved in this and he as a supervisor has to know that Mr. Parker has this condition. There's zero evidence of that. Mr. Parker is either going to die or his condition is going to get worse. Thank you. We'll hear next from the city's council. Good morning your honors if it please the court Jim Wyatt for the city of Susanville. On page one of the reply brief there is a sentence instead of ensuring that Parker received medical attention. A Susanville law enforcement officer contacted the presiding judge X party in violation of California law and raised the bond amount nearly fivefold to ensure that Parker could not secure a bond. That statement is completely false totally utterly false. The city of Susanville is the only name defendant. There's no officer individually named and so after completion of discovery the city of Susanville moved for summary judgment. The city argued that the only applicable theory of liability against the city was under Monell. That the first prong of Monell would be to identify a constitutional violation. That the arrest was lawful and pursuant to a valid court order and I will note to the court that that is conceded by the city of Susanville. That the arresting officer was not presented with and did not ignore a medical emergency requiring immediate treatment. And finally that the Susanville police department took no action to increase Mr. Parker's bail amount. That is what was argued to the district court. After thorough briefing the district court determined that plaintiff had no admissible evidence which would warrant a trial on the issue of a constitutional violation. So we never got past the first prong of Monell. We do not in any way wish to understate the loss of a life, a significant loss to the plaintiff. But the plaintiff unnecessarily complicates this matter for this court. Because the issues in the fact the issues are confused because of the many facts that have been presented to this court. As an example, in the opening brief the statement of facts from the plaintiff, from the appellate, excuse me, is ten pages long. The first five pages have nothing to do with this arrest. It is an arrest and incarceration that occurred three months before the subject arrest. Five pages of arrest and medical treatment. Only one page of the ten relates to the September 22nd arrest. That's on page nine. The reply brief has the first sentence that I read to you. It is completely false. So there has been a lot of information presented which confuses the issues. Let me ask you though specifically about the question of raising bail by means of ex parte contact. It seemed to me that there was some at least circumstantial evidence that that has occurred. That doesn't mean that it's necessarily a policy or practice or that it was done in a particular case. But that certainly does come across. It occurred before and it occurred in that arrest on the 9th. And some of the facts that are before the court will give the court a better feeling, I believe. Do you disagree that obtaining a bail enhancement ex parte without a hearing violates California law? Absolutely not. In fact, as it's provided for, it is specifically provided for in penal code section 1270.1. And I read, it states in paragraph A, except as provided in subdivision E, before any person who is arrested for any of the following crimes, it may be released on bail in an amount that is either more or less than the amount contained in the schedule of the bail for the offense, or may be released on his or her own recognizance, a hearing shall be held in open court before the magistrate or a judge. But it says specifically, except as provided in subdivision E. Subdivision E says, notwithstanding subdivision A, a judge or magistrate pursuant to section 1269C may, with respect to a bailable felony offense or misdemeanor offense of violating a domestic violation of the penal code, increase bail to an amount exceeding that set forth in the bail schedule without a hearing, provided an oral or written declaration of facts justifying the increase is presented under penalty of perjury by a sworn peace officer. Do we have that here? You have no evidence. That's the point. Well, no, I would assume that if there was a record that there had been an affidavit by the officer to the judge, that that would be here. I'm sorry to interrupt. The officer was deposed and cross-examined. He specifically stated he did nothing to increase the bail. It's a fact that the bail was increased without a hearing. That's a fact in this case, right? You have, that's not a fact in this case. It isn't? Well, there's a fact that the bail was increased. But we don't know by whom. The evidence does not demonstrate by whom. The only evidence you have is that there is a note in a jail record that says per the court. That's all that's there. So... That's not a triable issue of fact. The Susanville Police Department had nothing to do with the increase of the bail. As far as the record shows. If I understand your earlier argument, it is that even an oral sworn statement from a police officer would suffice under California law if there's a restraining order to increase the amount of bail, ex parte. That's what the statute provides. I'm not saying that's applicable. I'm just saying that this idea that it was somehow against the law that the Susanville Police Department on prior occasions had made a call to the court, which there is evidence they did. But that's three months earlier. I'm saying in this case we move for summary judgment and Judge England found that there was no evidence in this case that the city of Susanville increased the bail or made any effort to increase the bail. There was no evidence that the officer who arrested was confronted by an emergency medical situation. So all the arguments about, and there are some false statements in the reply brief as well. For instance, and this is how the plaintiff characterizes it. This evidence is sufficient to raise an inference that either Officer Vega or another officer, doesn't even say of the Susanville Police Department, another officer on the case called the judge and requested an increase in Parker's bail. That's not a reasonable inference and that's not an inference that anybody would allow a juror to make in a case. And that's what Judge England is saying, is that you don't have enough evidence. It happened once before, it's not against the law, it did not happen in this case. Well, not necessarily against the law. And the fact is the bail was increased. It was. By order of the court and that did ensure that he would have a prolonged detention. You have no evidence that you don't know if his mother is the richest person in the world and could have posted that bail. You have no evidence that she wasn't a bail bondsman herself. I think that's all very, very speculative. But what I'm saying is there's no evidence. The plaintiff didn't present any evidence in opposition to the motion for summary judgment. Excuse me, counsel, they don't have to present direct evidence, they can present circumstantial evidence. They have to present, if somebody says I'm in jail because I can't make bail, you have to present some evidence to, there has to be something presented to the court to confirm that. Other than the amount of bail. But the amount is, first of all, the amount in and of itself is not dispositive of the issue in any way. Well, to some people it is, to other people it's not. So you're arguing now that Mr. Parker was a millionaire and that's why he ended up in this position. No, he ended up in a position because he routinely violated a domestic restraining order. That's how he ended up in a position. And look what happened before. The bail was increased in the earlier amount. And what did he do? He went right back out and violated the restraining order. So I'm not unsympathetic to the situation. It's just that from a purely evidentiary, the question that was presented here, and I would like to paraphrase it or change it slightly, and I'm over my time, so I'm sorry. If you want me to stop, I will. Finish your current statement and then we'll... Did the district court err in granting summary judgment to the city of Susanville on Ms. Schwartz's claim that the city obtained a bail enhancement through an ex-party telephone conversation with judicial officials? The district court did not err because there was no evidence that the city did that. Thank you, counsel. Thank you. Ms. Thurman, you have some rebuttal time remaining. I'd like to begin my time by discussing once again the evidence, the causation issue with regards to the county. There is evidence that the prolonged detention without adequate medical care did lead to or contribute to Michael Parker's death. The Washoe County District Health Department issued the certificate of death. This is available at LSER031. It says in part that he died of an asystolic cardiac arrest as a consequence of an acute bacterial endocarditis. He was evaluated by a medical assistant numerous times before he saw Dr. Meadows and the physician's assistant missed the bacterial infection numerous times until he became so ill that he was rushed to the hospital where he later died. In addition, although there was no expert medical testimony in the depositions, this does raise an inference that the county was not acting in his best medical interest. Otherwise, their own county doctor said in his letter, and this is at the district court's order granting favor and summary judgment for the county at page 7, it says, it says, it is not my intent to discourage any legal actions against Mr. Parker, but to give my medical opinion that incarceration would not be in his best medical interest. This raises an inference that their own county doctor, who was familiar with the way that the medicine was practiced within the jail, could have made his medical condition worse, which it did, which eventually led to his death. And there was another letter from another doctor, Dr. Descenda, which stated something similar, but this is a very persuasive piece of evidence. This is a very strong inference that the practices at the county jail did contribute to Mr. Parker's death and that there was a deliberate indifference. And with regards to the issue that the city raised with regards to PC1270.1, this was not a domestic violence restraining order. This was a protective order with regards to stalking and driving by her house. There's no evidence on the record that this pertained to a domestic violence restraining order pursuant to 1270.1. Thank you, counsel. The case just argued is submitted. We are adjourned for this morning's session, and we thank you all.
judges: Wardlaw, Graber, Murguia